[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this limited contested dissolution of marriage proceeding, Charlene Marquis, twenty-six (26) years of age, and Keith Hadley, twenty-eight (28) years of age, were married on January 16, 1993. The plaintiff wife commenced this action for dissolution, returnable to the court September 14, 1993. The parties have both resided continuously in the State of Connecticut at least twelve (12) months prior to the filing of the complaint. No children were born of this union, nor were any children born to the plaintiff since the date of this marriage. No state, federal or municipal agency has contributed to the support of either party.
The plaintiff is currently employed at G.E. Capital earning $28,000 annually. The defendant, still a student at the time of this trial, is scheduled to graduate from Western Connecticut State University in May of 1995. Both parties are in good health. The defendant receives $166 per month disability payments for a military service related injury. He also is entitled to certain limited care at V.A. hospitals.
The parties met in high school and began dating when Ms. Marquis was nineteen (19) years old. They began living together in 1988. In February of 1991, they became engaged. The primary asset at the time of trial was an engagement ring which Mr. Hadley purchased for $8,000 with $2,000 borrowed from his mother and stepfather, $2,900 charged with the jeweler, and the $3,100 balance from settlement funds received from a lawsuit. According to Ms. Marquis' testimony, the $2,900 balance which was charged CT Page 6770 was paid from the proceeds of another settlement which Mr. Hadley received without contribution from her. Ms. Marquis cleaned Mr. Hadley's mother's and grandmother's houses by way of making payment to reduce the $2,000 loan. According to the testimony of the defendant's mother, Ms. Sheila Dobbin, $1,032.50 was "paid" toward the loan leaving a balance of $967.50 still due.
The parties were the fortunate beneficiaries of generous parents. The wedding was paid for by Ms. Marquis' family. Their Jamaican honeymoon, at a cost of approximately $5,000, was provided by Mr. Hadley's mother and stepfather. Mr. Hadley's father's wedding gift was a check for $3,000 (see defendant's Exhibit F) which Ms. Marquis recalled to be $2,000.
The parties returned to their rented residence in Danbury after their honeymoon. From the testimony of both parties at trial, the marriage began to break down almost as soon as it occurred. Ms. Marquis indicated that the day after the marriage Mr. Hadley changed, becoming very introverted and refusing to socialize. In her direct examination, she attributed this change in his attitude to the loss of his job at U.P.S. which, on cross-examination, she conceded occurred in 1991. Mr. Hadley testified that after their return from their honeymoon, his wife stayed away from their home, overnight, eighteen (18) days in February, twenty-three (23) days in March and twenty-five (25) days in April. This testimony was unrebutted by the plaintiff. In February, he asked her if she was seeing someone and Ms. Marquis responded in the affirmative. When Mr. Hadley asked if they were sleeping together, Ms. Marquis would not answer.
On the recommendation of the defendant's mother, Ms. Marquis began seeing a counselor in late February, early March of 1993. Although the plaintiff's testimony indicated that she sought counseling in an effort to save the marriage, it was clear from the defendant's mother's testimony that she had made the recommendation for individual counseling out of concern for her daughter-in-law, after Ms. Marquis had twice told her she was very unhappy, was not sure she wanted to be married, and sometimes felt she should run her car into a tree.
Much of the testimony focused on the question of the existence and/or dissipation of assets, including cash wedding gifts and stocks.
The plaintiff maintained that certain stocks had been gifted CT Page 6771 to the parties from the defendant's father. Based upon the defendant's testimony and that of his father, who provided the original stock certificates at the time of trial, the court finds that the parties had no ownership interest in stocks. (See defendant's Exhibit G.)
The plaintiff claims that the parties received $13,000 to $14,000 in cash wedding gifts and suggests in her testimony that some of these funds may have been in other accounts not disclosed at the time of trial. Although a list of wedding gifts was kept by Ms. Marquis, it was not available or produced at the trial. No bank records indicating cash wedding gifts were offered other than the parties' joint Chase savings account. (Plaintiff's Exhibit 1.) Accordingly, the court will not find that assets other than those reflected on the parties' respective financial affidavits exist. The court also finds reasonable Mr. Hadley's withdrawal of $4,500 of the joint savings, albeit without consultation with Ms. Marquis, in April of 1993, to pay that sum to reduce the joint credit card debt of the parties. (See plaintiff's Exhibit 1 and defendant's Exhibit B.)
The court finds that at the time of trial, the debts of the parties, exclusive of counsel fees, were as follows:
 $ 882.00 IRS 4,626.00 Peoples MC 4,597.50 Sheila Dobbins (auto) 967.50 Sheila Dobbins (ring) 3,600.00 James Hadley 455.00 Core States MC 595.00 Fleet VISA 817.00 Citibank MC 2,665.00 VISA 407.06 Mastercard
The court finds that the marriage has broken down irretrievably and a decree may enter on the grounds of irretrievable breakdown as there is clearly no hope of reconciliation. From the evidence presented, it appears that the plaintiff is more at fault for this dissolution, but fault is no longer that significant having become a mere element for consideration as opposed to a controlling determination. SeeSands v. Sands, 188 Conn. 98, 102.
No alimony is awarded to either party. CT Page 6772
The plaintiff is ordered to cooperate fully with the defendant in converting his current medical insurance coverage under COBRA. The defendant shall be responsible for the cost of premiums associated with such coverage. Any amount due by the defendant to the plaintiff for the cost of his coverage pursuant to prior pendente lite orders of the court are to be paid within one week.
The defendant is ordered to assume, pay and hold the plaintiff harmless from any liability associated with the debts reflected on his financial affidavit date January 4, 1995. The plaintiff is ordered to assume, pay and hold the defendant harmless from any liability associated with the debts reflected on her financial affidavit dated January 4, 1995. These orders include any amounts due, as stated previously in this decision, if different from the amounts reflected on the affidavits.
In dividing and/or assigning property, the court must consider the liabilities of the parties, the opportunities of each for future acquisition of capital assets and income, and the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. Dubicki v. Dubicki, 186 Conn. 709, 714-15; Corbin v.Corbin, 179 Conn. 622, 624. The court is left to its broad discretion in dividing property so long as it considers all relevant statutory criteria. It is not obligated to make express findings on each and is not required to give equal weight to each in determining an award. No single criteria is preferred over the others and the weight placed on each is determined upon the circumstances of each case. Debowsky v. Debowsky, 12 Conn. App. 525,526-27; Carpenter v. Carpenter, 188 Conn. 736, 740-41;Weiman v. Weiman, 188 Conn. 232, 234.
After considering all of the relevant statutory criteria, the property of the parties is divided as follows:
 The plaintiff shall be entitled to the cocktail table, mirror, Lenox china set, china cabinet, crystal, toaster, and the pots and dishes in her possession. The defendant shall deliver to the plaintiff within one week any of these items which are in his possession or control.
 The defendant shall be entitled to the entertainment center, jet ski, VCR, gas grill, 1991 Nova, portable phone, CT Page 6773 his clothing, KJH diamond tie pin, two gold chains gifted by his parents, set of silver plates/bowl and spoon, his luggage, and any appliances, tools, dishes, pots and furniture in his possession. The defendant shall also be entitled to the engagement ring and wedding ring and shall assume, pay and hold the plaintiff harmless from any liability associated with the balance of the debt related to same. The plaintiff shall deliver to the defendant, within one week, any of these items which are in her possession or control.
Each party is ordered to pay their respective counsel fees.
Dennis, J.