[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding is a limited contested dissolution of a certain marriage between the parties which occurred on March 8, 1986 at Danbury, Connecticut. The plaintiff has resided continuously in this jurisdiction at least twelve months next before the filing of the complaint. No minor children were born of this marriage and no minor children have been born to the defendant since the date of the marriage. No federal, state nor municipal agency is contributing any funds to the support of these parties and no public or private foundation or trust is contributing anything to either one of them. The court finds that the marriage has broken down irretrievably and a decree may enter on the grounds of irretrievable breakdown.
The plaintiff is forty-eight (48) years old, a high school graduate and a police officer in the City of Danbury. He CT Page 12718 demonstrates an earning capacity for the year of 1991 and three subsequent years thereafter of something slightly in excess of fifty thousand ($50,000) dollars per year. He has a life insurance policy, as a police officer, in the amount of one hundred fifty thousand dollars ($150,000), and the present value of his pension is twenty-one thousand dollars ($21,000). The evidence indicates that he enjoys good health.
The defendant is forty-three (43) years old, has completed the eleventh (11) grade and is currently enrolled in a general educational development program (GED). Her earning capacity is somewhat limited and it appears to approximate fifteen thousand ($15,000) dollars per year. She complains of back problems and suffers from multiple sclerosis.
This marriage is the plaintiff's second and the defendant's third. Each has two (2) children by the respective former unions. The evidence supports an inference that the children provided many opportunities for what might be euphemistically termed "marital disagreements." While this is a nine year marriage, the plaintiff is convinced that it actually was a three year marriage and she, not accepting his version, claims it was a viable relationship for at least six if not more years. It degenerated to a point where each seems to have been driven to inflict as much inconvenience, annoyance, worry and misery upon the other as possible. Prior to the plaintiff's vacating the marital residence approximately six months ago, when he took up residence with a fellow employee in the police department, the parties had been sleeping in separate rooms, each of which was padlocked. Photographic exhibits of the marital dwelling house show it to be in a state of disarray.
It was purchased during the days of inflated value and then refinanced. It is currently worth less than ninety-nine thousand ($99,000) dollars, and is subject to that first mortgage in the amount of one hundred sixteen thousand ($116,000) dollars. Each recognizes that a foreclosure proceeding is imminent and from that recognition flows an acceptance of its loss through that means. They have incurred other debts which can only be considered substantial. This court is unwilling and unable to find either of the parties responsible for the breakdown of the marriage and finds that the evidence of culpability is best described by the idiom "six of one and half dozen of the other." While it is rare and somewhat surprising, in view of the antagonism demonstrated by both parties, there are, nevertheless, CT Page 12719 some areas of agreement with respect to the resolution of certain property rights. In accordance with that agreement, the defendant is awarded exclusive possession of the marital domicile until such time as a foreclosure thereon reaches its conclusion. Neither party is ordered to pay any of the charges against the marital domicile with the sole exception of the homeowner's insurance, which the plaintiff has agreed to continue and is so ordered to continue. He has also agreed and is ordered to return certain "Christmas houses" to the defendant. The defendant, who has indicated her intent to exercise her COBRA rights, is ordered to pay the premiums thereon throughout the period of her eligibility.
The court is vested with broad discretion in dividing property so long as it considers all relevant, statutory criteria. It is not obligated to make express findings on each and it is not required to give equal weight to each when determining an award. No single criterion is preferred over the others and the weight placed on each is dependent upon the circumstances of each case. Debowsky v. Debowsky, 12 Conn. App. 525,526-27; Carpenter v. Carpenter, 188 Conn. 736, 740-41;Weiman v. Weiman, 188 Conn. 232, 234. The purpose of the property division is to equitably divide the ownership of the parties' property. See Dubicki v. Dubicki, 186 Conn. 709, 714 n. 2. It may also be said to unscramble the ownership of property, giving to each spouse what is equitably his, Beede v. Beede, 186 Conn. 191,195; Weiman v. Weiman, supra; C.G.S. § 46b-81 (c). The division herein is quite limited in view of the dire financial condition of the parties and the lack of virtually all property.
The single asset in dispute is the plaintiff's pension plan and how much thereof the defendant should be awarded. While the plaintiff alleges that the marriage was viable for a period of only three years, the defendant would argue that a nine calendar year marriage is exactly that, nine calendar years. It is the defendant's testimony that the parties began utilizing separate bedrooms in 1993 and the plaintiff grudgingly acknowledges that possibility. Court finds that the last semblance of life in the marriage was early in the year 1993. In accordance therewith, it finds that the length of marriage in determining her interest in his pension is a seven (7) year factor. Computation may be expressed in the following figures:
$21,982.50 x 7/26 x .5 = $2,959.19. CT Page 12720
The plaintiff is ordered to pay that amount in two equal installments of nine hundred eighty-six dollars and forty cents ($986.40), and the final installment of nine hundred eighty-six dollars and thirty-nine cents ($986.39) coincident with the day in November when he receives his paid holiday moneys from the City of Danbury. The first of these installments is due in November of 1995, the second in November of 1996 and the third, and final, in November of 1997. The plaintiff is awarded his bedroom furniture, clothing and personal affects, his tools and his father's tools together with his VCR and tape rewinder. All other furniture in the marital domicile is awarded to the defendant.
In determining whether or not to award alimony, the court should consider the length of the marriage, the cause of the dissolution, the age, health, station, occupation, amount and source of income, vocational skills, employability, the estate and needs of each of the parties and any property award pursuant to §§ 46b-81 (c), 46b-82. Dubicki v. Dubicki, 186 Conn. 707,714-15; citing therein McPhee v. McPhee, 186 Conn. 167, 171 n. 3; see Krieble v. Krieble, 168 Conn. 7, 8; Baker v. Baker, 166 Conn. 476,478. The purpose of periodic and/or lump sum alimony is based primarily upon a continuing duty to support. Dubicki v.Dubicki, supra, 714 n. 2; Wood v. Wood, 165 Conn. 777, 784. Once again the court has considered the statutory criteria, together with the cases which speak to them. The plaintiff is ordered to pay to the defendant, as and for alimony, the sum of three hundred ($300) dollars per week until the first day of April, 1996. Thereafter, this award of alimony shall be reduced to one hundred fifty ($150) dollars per week until the first day of April, 1997, when it shall be further and finally reduced to the sum of one hundred ($100) dollars per week, which shall be payable until the first day of April, 2001. The he obligation to pay alimony shall be guaranteed by his designation of her as a limited beneficiary under his life insurance policy in the minimum amount of fifteen thousand ($15,000) dollars of his total insurance coverage. His insurance and alimony obligation shall endure until either of the parties shall die or until the defendant shall remarry or cohabit with an unrelated male individual. In utilizing the term "cohabitation," the court expressly rejects the definition as set forth in § 46b-86 (b) and assigns that determination to the factual predicate the evidence may establish at any such hearing.
The defendant may hardly be said to have ample, liquid funds CT Page 12721 from any source to satisfy the entire burden of the fees incurred by her in this litigation. The measure of "ample, liquid funds" is set forth in Venuti v. Venuti, 185 Conn. 156, 163. This court recognizes the lack of any substantial moneys or assets in this particular marriage. Nevertheless, circumstance requires that the defendant receive a contribution toward her counsel fees. Accordingly, the plaintiff is ordered to pay to the defendant, as and for an allowance to defend this action, the sum of seven hundred and fifty dollars ($750), which shall be payable in one installment on or before the first day of July, 1996.
Judgment may enter in accordance herewith.
Moraghan, J.